UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LAWRENCE BRUYN,<br><br>            Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,[1]<br>Acting Commissioner of Social Security,<br><br>            Defendant. | Case No. CV 12-6842 JC<br><br>MEMORANDUM OPINION |

## I.  SUMMARY

On August 10, 2012, plaintiff Daniel Lawrence Bruyn ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The

---

[1] Carolyn W. Colvin is substituted as Acting Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d).

Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; August 20, 2012 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[2]

## II.  BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 30, 2009, plaintiff filed an application for Supplemental Security Income benefits.  (Administrative Record ("AR") 18, 149).  Plaintiff asserted that he became disabled on March 1, 1987, due to a seizure disorder.  (AR 198).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on April 27, 2011.  (AR 35-58).

On June 8, 2011, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 18-24).  Specifically, the ALJ found:  (1) plaintiff suffered from the following severe impairment:  seizure disorder (AR 20); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 21); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 416.967(b)) with additional limitations[3] (AR 21); (4) plaintiff had no past relevant work (AR 23); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could

---

[2] The harmless error rule applies to the review of administrative decisions regarding disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of application of harmless error standard in social security cases) (citing, *inter alia*, Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

[3] The ALJ determined that plaintiff:  (i) could perform light work; (ii) could perform no more than occasional postural movement; (iii) could not climb ladders; (iv) could not work around conditions which are hazardous to someone with a seizure disorder; and (v) could not work around concentrated exposure to environmental irritants.  (AR 21).

perform, specifically cashier II and hand packager (AR 24); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 22).

The Appeals Council denied plaintiff's application for review. (AR 1).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///

1  (4) Does the claimant possess the residual functional capacity to
2      perform claimant's past relevant work?  If so, the claimant is
3      not disabled.  If not, proceed to step five.
4  (5) Does the claimant's residual functional capacity, when
5      considered with the claimant's age, education, and work
6      experience, allow the claimant to adjust to other work that
7      exists in significant numbers in the national economy?  If so,
8      the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.   Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and

did not arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

      To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment).  Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling ("SSR") 96-7p.  Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in her credibility assessment.  Burch, 400 F.3d at 681.

      **2.**     **Analysis**

      Plaintiff contends that the ALJ inadequately evaluated the credibility of his subjective complaints.  (Plaintiff's Motion at 3-8).  The Court disagrees.

      First, the ALJ properly discredited plaintiff's subjective complaints as inconsistent with plaintiff's daily activities and other conduct.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony).  For example, as the ALJ noted, despite testifying that he suffered from disabling seizures, plaintiff reported during a Neurological Evaluation that he lived alone and that he "exercises . . . walks, reads, writes, shops and prepares meals" with "some assistance from his girlfriend."  (AR 273).

///

While plaintiff correctly notes that he is not required to demonstrate that "he is utterly incapable [of] functioning in his daily life" (Plaintiff's Motion at 8), Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("one does not need to be 'utterly incapacitated' in order to be disabled"), this does not mean that an ALJ must find that a claimant's daily activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount the credibility of conflicting subjective symptom testimony. See Molina, 674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . [e]ven where those activities suggest some difficulty functioning. . . .") (citations omitted). Here, the ALJ properly discounted plaintiff's subjective-symptom testimony to the extent plaintiff's daily activities were inconsistent with a "totally debilitating impairment." Id.; see, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair, 885 F.2d at 604). While plaintiff argues that "[plaintiff's] ability to care for himself and living [sic] alone" do not "give rise to an adverse credibility finding," (Plaintiff's Motion at 8), the Court will not second-guess the ALJ's reasonable determination to the contrary, even if the evidence could give rise to inferences more favorable to plaintiff.

Second, in assessing credibility an ALJ may properly consider a plaintiff's unexplained failure to seek treatment consistent with the alleged severity of his subjective complaints or to follow a prescribed course of treatment. See Molina, 674 F.3d at 1113 ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.) (citations and quotation marks omitted); see also SSR 96-7p at *7 ("[claimant's] statements may

be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the [claimant] is not following the treatment as prescribed and there are no good reasons for this failure."). Here, the examining neurologist noted that plaintiff "refuse[d]" a "dilantin level."[4] (AR 40-41, 275). Plaintiff's refusal to submit to a test of the therapeutic levels of medication in his blood suggests that plaintiff did not, as he asserted, "always take[] medication exactly as prescribed." (AR 272). Moreover, as the ALJ noted, the record lacks evidence of regular usage of strong medication to alleviate plaintiff's seizures that would significantly impair plaintiff's ability to do basic work activities, and no evidence of any significant medication side effects. (AR 23). For example, in a Seizure Disorder form dated February 11, 2010, plaintiff's treating physician, Dr. Edward H. Jeon, noted that plaintiff's response to therapy was "very good," and noted side effects from plaintiff's medication as "none." (AR 269).

Third, an ALJ may discredit a plaintiff's subjective symptom testimony in part based on conflicts with objective medical evidence. See Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). Here, as the ALJ noted, the "sparse" medical record does not support plaintiff's allegations regarding the frequency and severity of his seizures. (AR 22). For example, the minimal number of treatment notes that are in the record from Dr. Jeon document only a few reports from plaintiff of seizures, and reflect that most of plaintiff's visits were simply for medication management. (AR 249-51, 306-12). In

---

[4] At the hearing the ALJ noted that "there has been a bit of an issue of cooperation." (AR 40-41).

addition, although plaintiff testified at the hearing that he would experience 5-10 grand mal seizures and 15-20 petit mal seizures per month (AR 48), the Seizure Disorder form completed by plaintiff's treating physician states that plaintiff only had 1-2 major and 2-3 minor convulsive seizures per year. (AR 267).

Fourth, the ALJ noted that, at the hearing, plaintiff's thoughts "did not seem to wander" and that plaintiff "answered [questions] alertly and appropriately." (AR 23). The ALJ was permitted to rely on her own observations of plaintiff at the hearing as one of the several factors affecting plaintiff's credibility. See Drouin v. Sullivan, 966 F.2d 1255, 1259 (9th Cir. 1992) (upholding credibility rejection where ALJ's observation of claimant at the hearing was one of several legitimate reasons stated); see also Verduzco, 188 F.3d at 1090 (ALJ's reliance on observations of claimant proper where ALJ pointed to plaintiff's affirmative exhibition of symptoms which were inconsistent with both medical evidence and plaintiff's other behavior and did not point to the absence of the manifestation of external symptoms to discredit plaintiff, referring to the latter as disapproved "sit and squirm" jurisprudence).

Finally, the ALJ discounted the credibility of plaintiff's subjective symptom testimony because plaintiff "apparently refused to try a different, possibly more effective anti-seizure medication." (AR 22). As plaintiff notes, the record does not appear to support this finding. In fact, although the ALJ asserted in the decision that when "[plaintiff] was admitted to the hospital after experiencing a tonic clonic seizure . . . [he] admitted to being non-compliant with his medication," the records from plaintiff's hospital treatment indicate that plaintiff claimed that he was taking his prescribed medication "religiously." (AR 20) (citing Exh. 2F at 5 [AR 264]). Any such error was harmless, however, because the remaining reasons identified by the ALJ for discrediting plaintiff are supported by substantial evidence and any such error would not negate the validity of the ALJ's ultimate credibility conclusion in this case. See Molina, 674 F.3d at 1115

(Where some reasons supporting an ALJ's credibility analysis are found invalid, the error is harmless if (1) the remaining valid reasons provide substantial evidence to support the ALJ's credibility determination, and (2) "the error does not negate the validity of the ALJ's ultimate conclusion.") (citations and internal quotation marks omitted).

Accordingly, a remand or reversal on this basis is not warranted.

### B. The ALJ Properly Evaluated the Severity of Plaintiff's Physical Impairments

#### 1. Pertinent Law

At step two of the sequential evaluation process, plaintiff has the burden to present evidence of medical signs, symptoms and laboratory findings[5] that establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two where "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." Id. (quoting SSR 96-4p).

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the normal standard of review to the requirements of step two, a court must determine

---

[5] A medical "sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]" Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p). A "symptom" is "an individual's own perception or description of the impact of his or her physical or mental impairment(s)[.]" Id. (quoting SSR 96-4p); see also 20 C.F.R. § 416.928(a)-(b).

1 whether an ALJ had substantial evidence to find that the medical evidence clearly
2 established that the claimant did not have a medically severe impairment or
3 combination of impairments.  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)
4 (citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)
5 ("Despite the deference usually accorded to the Secretary's application of
6 regulations, numerous appellate courts have imposed a narrow construction upon
7 the severity regulation applied here.").  An impairment or combination of
8 impairments can be found "not severe" only if the evidence establishes a slight
9 abnormality that has "no more than a minimal effect on an individual's ability to
10 work."  Webb, 433 F.3d at 686 (citation omitted).

### 2.   Analysis

Plaintiff contends that reversal or remand is warranted because the ALJ failed to find plaintiff's "cervical radiculopathy" a severe physical impairment at step two of the sequential evaluation process.  (Plaintiff's Motion at 8-12).  The Court disagrees.

Here, the record medical evidence clearly supports the ALJ's determination at step two that plaintiff's purported cervical radiculopathy was not a severe impairment.  First, plaintiff correctly notes that treatment records from Dr. Jeon reflect that between February 27, 2007 and April 10, 2007 Dr. Jeon diagnosed plaintiff with cervical radiculopathy, that plaintiff complained of left arm pain, and that an MRI taken on February 27, 2007 documents certain irregularities in plaintiff's cervical spine.  (AR 303-04, 308-10).  Such evidence, however, fails to establish any impairment which satisfies the durational requirement – *i.e.*, a disabling impairment expected to last for *at least* twelve months during the relevant time period commencing on October 30, 2009 (when plaintiff filed his claim in this case).  See 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii)

///

Second, plaintiff points to no other objective medical signs or laboratory findings to support his complaints in a July 29, 2010 Disability Report – Appeal that he "developed herniated back discs (L-4, L-5, S-1) and neck discs C-1 and C-2." (Plaintiff's Motion at 9-10, 11-12) (citing AR 229). In fact, as the ALJ noted, there is no evidence in the record that plaintiff received any treatment for his spine condition during the relevant period. (AR 21). Even so, plaintiff fails to demonstrate that Dr. Jeon's cervical radiculopathy diagnosis in 2007 or any impairment related to plaintiff's back, caused additional functional limitations that were not already accounted for in the ALJ's residual functional capacity assessment.

Finally, while plaintiff alleges that he also experienced pain from his cervical radiculopathy, the ALJ, as noted above, properly discounted the credibility of plaintiff's pain allegations for clear and convincing reasons supported by substantial evidence.

Accordingly, a remand or reversal on this basis is not warranted.

### C.     The ALJ Properly Evaluated Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ failed properly to assess his residual functional capacity, in essence, because the ALJ failed to account for plaintiff's alleged cervical radiculopathy and related pain. (Plaintiff's Motion at 12-13). As noted above, however, the ALJ properly found plaintiff's cervical spine condition to be "non-severe," and discredited plaintiff's allegations of disabling pain for clear and convincing reasons. (AR 21-22). Moreover, the ALJ's residual functional capacity assessment (*i.e.*, that plaintiff could do light work with occasional postural movement, no climbing of ladders or work around conditions hazardous to someone with a seizure disorder, and no concentrated exposure to environmental irritants) (AR 21) is supported by substantial evidence – specifically, the opinions of the examining neurologist (who found no functional

limitations for plaintiff, and precluded plaintiff from working at heights, around dangerous machinery, and around unprotected water, and precluded operating a motor vehicle) and the reviewing physician (who found no limitations beyond those stated in the ALJ's residual functional capacity assessment) (AR 275, 280-87).  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); id. (opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

Accordingly, a remand or reversal on this basis is not warranted.

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 18, 2013

                                              /s/
                         Honorable Jacqueline Chooljian
                         UNITED STATES MAGISTRATE JUDGE